UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ABRAHAM SABEL,

                                    Plaintiff,

        - against -

HALSTED FINANCIAL SERVICES, LLC and
LVNV FUNDING, LLC,

                                    Defendants.
----------------------------------------------------------x

**OPINION & ORDER**

 No. 20-CV-1216 (CS)

Appearances:

Kenneth Willard
Stein Saks, PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Peter G. Siachos
Gordon Rees Scully Mansukhani, LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court is Defendants' motion to dismiss.  (Doc. 15.)  For the following reasons,

the motion is GRANTED.

I.      **BACKGROUND**

        I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint,

(Doc. 1 ("Compl.")), as supplemented by documents integral thereto.  This Fair Debt Collection

Practices Act ("FDCPA") dispute arises out of a debt collection letter that Defendant Halsted

Financial Services, LLC sent to Plaintiff on or about April 4, 2019.  (*See id.* ¶ 29; *id.* Ex. A.)

Halsted had been retained by Defendant LVNV Funding, LLC to collect the debt, which was

originally owned by Citibank, N.A. (*Id.* ¶¶ 23-24, 27.)[1] The letter is a single page and contains information regarding the original and current creditors, balance details, and payment options. (*See id.* Ex. A.) As relevant to the instant motion, the letter's penultimate paragraph states, "Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have." (*Id.* Ex. A.) The next and last paragraph of the letter, which appears in the same font and size as the preceding paragraphs, contains the FDCPA's "mini-*Miranda*" warning and validation notice and reads as follows:

> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different than the current creditor.

(*Id.* Ex. A.)

---

[1] In one paragraph of the Complaint, Plaintiff describes the debt as "currently owed to Defendant Citibank, N.A." (Compl. ¶ 29.) As this allegation contradicts the debt collection letter attached to the Complaint, (*see id.* Ex. A (listing the current creditor to whom the debt is owed as LVNV and the original creditor as Citibank)), as well as other paragraphs of the Complaint, (*see, e.g.*, *id.* ¶ 27 (describing LVNV as the current owner of the debt)), and Plaintiff's own description of the facts in his opposition memorandum, (*see* Doc. 17 ("P's Opp.") at 2), and as Citibank is not named as a defendant in this action, the Court assumes that this was a typographical error and does not accept this allegation as true. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order) (courts need not accept as true "factual assertions that are contradicted by the complaint itself" or "by documents upon which the pleadings rely").

Plaintiff filed suit on February 11, 2020, alleging that the credit reporting language in the penultimate paragraph of the letter violates the FDCPA by overshadowing the validation notice. (*See id.*)  Specifically, Plaintiff alleges that the credit reporting language coerces payment from the consumer through the threat of imminent credit reporting during the initial thirty-day validation period and therefore violates 15 U.S.C. §§ 1692g and 1692e.  (*Id.* ¶¶ 34-36, 42, 44, 47, 49.)  Defendants filed a letter on March 6 in contemplation of a motion to dismiss for failure to state a claim.  (Doc. 9.)  Plaintiff responded on March 17, (Doc. 13), the Court held a pre-motion conference on March 25, (Minute Entry dated Mar. 25, 2020), and the instant motion followed.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

On a motion to dismiss, a court is generally confined to the four corners of the complaint, the documents incorporated in or attached thereto, documents on which the plaintiff relied in bringing the case, and things of which it is entitled to take judicial notice.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  Here, in addition to the Complaint, I also consider the debt collection letter dated April 4, 2019, which was attached to and relied on throughout Plaintiff's Complaint.  *See, e.g.*, *Rios v. Pinnacle Fin. Grp., Inc.*, No. 05-CV-10290, 2006 WL 2462899, at *2 & n.1 (S.D.N.Y. Aug. 23, 2006) (considering collection letter attached to complaint to determine whether the plaintiff stated an FDCPA claim).

III.   **DISCUSSION**

Defendants argue that Plaintiff has failed to state a claim under §§ 1692g or 1692e of the FDCPA.  I address each claim in turn.

A.   **Section 1692g**

Section 1692g(a) mandates that in its initial communication with a consumer (or within five days of it), a debt collector must send the consumer a written notice containing, among other things, a statement that the consumer has thirty days to notify the debt collector in writing that the consumer disputes the debt, whereupon the debt collector will obtain verification of the debt

and mail it to the consumer.  15 U.S.C. § 1692g(a)(4).  This language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32-33 (2d Cir. 1996).  Plaintiff does not dispute that the collection letter sent to him contains the information mandated by § 1692g(a).

"The thirty-day window is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008); *see Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 660 (S.D.N.Y. 2006) ("[D]uring the validation period, the debtor's right to dispute coexists with the debt collector's right to collect.") (internal quotation marks omitted).  But § 1692g(b) provides, in part, that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt."  This means that a debt collector has "the obligation, not just to convey the [validation notice], but to convey it clearly."  *Jacobson*, 516 F.3d at 90.  Accordingly, the Second Circuit has held that a debt collector violates § 1692g "even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor."  *Id.*  "A notice overshadows or contradicts the validation notice if it would make the least sophisticated consumer uncertain as to her rights."  *Id.* (internal quotation marks omitted).

"The least sophisticated consumer test is an objective inquiry directed toward ensuring that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (*per curiam*) (internal quotation marks and alteration omitted).  "The hypothetical least sophisticated consumer does not have the astuteness

of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotation marks omitted). Consequently, this standard does not allow for unreasonable, bizarre, or idiosyncratic interpretations of collection notices, and "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (internal quotation marks omitted); *see Weber v. Computer Credit, Inc.*, 259 F.R.D. 33, 38 (E.D.N.Y. 2009) ("It is assumed that even the least sophisticated consumer will read a debt collection letter in its entirety."). The least sophisticated consumer inquiry "is to be conducted with a recognition that confusion can occur in a myriad of ways, such as when a letter visually buries the required validation notice, contains logical inconsistencies, fails to explain an apparent inconsistency, or presents some combination of these (or similar) vices." *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law that the Court may resolve on a motion to dismiss." *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014) (internal quotation marks omitted).

"A complaint alleging a violation of § 1692g for being overshadowing or contradictory may survive a motion to dismiss if (1) the plaintiff pleads a contradiction between the demand language and the validation language, and (2) it is possible that the plaintiff could prove that the contradiction would mislead the least sophisticated consumer into disregarding his or her rights under the validation notice." *Santora v. Capio Partners, LLC*, 409 F. Supp. 3d 106, 108-09 (E.D.N.Y. 2017) (internal quotation marks omitted). Here, Plaintiff has not plausibly alleged a

contradiction between the credit reporting language and the validation language, and even if he had, the least sophisticated consumer would not be misled into disregarding his or her rights under the validation notice.

Plaintiff alleges that the statement, "Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations," coerces immediate payment by threatening imminent credit reporting during the initial thirty-day validation period, (Compl. ¶¶ 33-36), and thus Plaintiff argues that the least sophisticated consumer would be misled into disregarding his or her rights under the validation notice, which appears in the next paragraph, (see P's Opp. at 5-6, 8-9, 19). But nothing in this statement – which appears in the same font and size as the validation notice directly below it – threatens imminent credit reporting or demands immediate payment, and "[l]anguage that in no way demands *immediate* payment of the plaintiff's past due debt, or threatens adverse consequences in the event the debt is not paid within 30 days does not violate the FDCPA." *Belichenko v. Gem Recovery Sys.*, No. 17-CV-1731, 2017 WL 6558499, at *3 (E.D.N.Y. Dec. 22, 2017) (emphasis in original) (internal quotation marks and alteration omitted); see *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-CV-4356, 2016 WL 6069180, at *5 (E.D.N.Y. Oct. 17, 2016) (dismissing a § 1692g claim where "the Collection Letters neither demand that payment be made within thirty (30) days, nor threaten adverse consequences if payment is not received within thirty (30) days," and therefore "the Collection Letters do not contain language that contradicts or is otherwise inconsistent with Plaintiffs' right to demand validation of their debts"); *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 157 (E.D.N.Y. 2005) (credit reporting language did not overshadow or contradict a validation notice that "was presented in the same font, size and type-face" as the disputed

language).  Further, "[m]erely informing a debtor that her debt, if not paid, will be reported to a consumer reporting agency does not, by itself, constitute a violation of the FDCPA.  Indeed, it would be counterproductive to penalize a debt collector for suggesting that steps which legally could be taken might in fact be taken."  *Fashakin v. Nextel Commc'ns*, No. 05-CV-3080, 2009 WL 790350, at *9 (E.D.N.Y. Mar. 25, 2009) (internal quotation marks and alteration omitted).

It is for these reasons that courts in the Second Circuit have rejected arguments that such credit reporting language, standing alone, overshadows the validation notice.  *See Ward v. Gold Key Credit, Inc.*, No. 18-CV-2834, 2019 WL 3628795, at *3 (E.D.N.Y. July 11, 2019) (statement that defendant "reports to TransUnion and Equifax and your account may be reported if it is not paid" did not give rise to a § 1692g claim), *report and recommendation adopted*, 2019 WL 3605781 (E.D.N.Y. Aug. 6, 2019); *Reynolds v. Caine & Weiner Co.*, No. 17-CV-7590, 2018 WL 5928123, at *5 (E.D.N.Y. Nov. 13, 2018) (statement that "a negative credit report reflecting your credit score may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation" did not violate § 1692g, because it "would not imply to the least sophisticated consumer that he must take action within any time frame that contradicts the statutory thirty-day period") (internal quotation marks omitted); *Belichenko*, 2017 WL 6558499, at *4 (statement that defendant's "policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your client rating and your ability to obtain credit in the future" did not overshadow validation notice because it "would not confuse the least sophisticated consumer about his or her rights under § 1692g, which are properly spelled out in the letter's final paragraph and appear on the same page in the same size and typeface as the allegedly overshadowing language"); *Sebrow v. ER Sols., Inc.*, No. 07-CV-5016, 2009 WL 136026, at *5 (E.D.N.Y. Jan. 20, 2009) (statements that "[i]f you fail to resolve this collection

account, we may report your delinquent account to Equifax, Trans Union and Experian" and that "[t]his may affect your universal credit score" did not violate § 1692g because "there is no language in the letter that would suggest to plaintiff that he must take action within any time frame that contradicts the statutory thirty-day period").

Courts in sister circuits have likewise rejected claims similar to Plaintiff's. *See McMurray v. ProCollect, Inc.*, 687 F.3d 665, 671 (5th Cir. 2012) ("[L]etters that encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay . . . do not overshadow the required notice language.") (internal quotation marks and alteration omitted); *Wright v. AR Res., Inc.*, No. 20-CV-985, 2020 WL 4428477, at *8-10 (M.D. Fla. July 31, 2020) (concluding "as a matter of law that the language . . . warning the consumer that their 'credit report may have a negative impact if we do not hear from you' did not overshadow the required Section 1692g notice" because, "as the Fifth and Second Circuits have held, such language merely informs the debtor about the possible negative consequences of failing to pay a debt and, thus, would not make the least sophisticated consumer uncertain about his rights"); *Hanford v. Franklin Collection Serv., Inc.*, No. 17-CV-2005, 2018 WL 2129612, at *4 (E.D. Mo. May 9, 2018) (dismissing § 1692g claim where "nothing in the [collection letter] request[ed] payment during the 30-day dispute window" and rejecting the argument that credit reporting language overshadowed or contradicted plaintiff's § 1692g rights by leaving open the possibility that the debt collector would report the account even if it received a validation request); *Schuerkamp v. Afni, Inc.*, No. 10-CV-6282, 2011 WL 5825969, at *4 (D. Or. Nov. 16, 2011) (statement that defendant "may report information about your account to credit bureaus" would not mislead the least sophisticated consumer or "overshadow the right to dispute the debt").

Plaintiff relies on *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996), (*see* P's Opp. at 11), but that case does not support his position.  In *Russell*, the validation notice (which was printed on the back of a collection letter) was "contradicted and overshadowed by the warning on the front that the collection would be posted to [plaintiff's] file unless she chose not to dispute it and paid it within the next 10 days."  74 F.3d at 34 (emphasis omitted).  The defendant in *Russell* also sent a second collection letter twenty days later that demanded payment within five days, giving "the debtor only 25 days from the date of the first notice to decide whether to challenge the claim," which "is less than the 30 days required to be given a consumer under the [FDCPA]." *Id.* at 36.  Accordingly, the Second Circuit held that the "plaintiff would not realize she had a statutory right to dispute the debt within 30 days in the face of a second notice from the debt collector giving her only 25 days."  *Id.*  By contrast, the collection letter in this case does not demand immediate payment or specify any date by which payment must be made.  For the same reason, Plaintiff's reliance on *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521 (E.D. Pa. 1996), (*see* P's Opp. at 19), is similarly misplaced.  In *Adams*, "language calling for 'immediate' payment contradict[ed] the validation notice, which provide[d] for a thirty day period in which the debtor [was] able to contest the debt."  926 F. Supp. at 527.  Here, the collection letter contains no such language.

Plaintiff contends that the letter should have contained transitional language to explain that the credit reporting statement did not conflict with the validation notice.  (P's Opp. at 12, 18-19.)  But "where a collection letter does not demand immediate payment, 'transitional language' calling attention to a validation notice is not necessary."  *McGinty*, 2016 WL 6069180, at *6. Regardless, the letter did contain transitional language:  the very next sentence after the disputed language states, "This notice in no way affects any rights you may have," and Plaintiff's rights,

*i.e.*, the validation notice, are laid out in the next paragraph.  (Compl. Ex. A.)  Consequently, even if the credit reporting language could be interpreted as a demand for payment, this disclaimer "inform[ed] the consumer that the demand does not override his or her rights under Section 1692g to dispute or seek validation of the debt," *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 306-07 (E.D.N.Y. 2008), and thus not even the least sophisticated consumer could have been misled into disregarding the validation notice.

In short, the credit reporting language in the collection letter would not mislead the least sophisticated consumer into disregarding his or her rights under the validation notice, and Plaintiff has therefore failed to plausibly allege a § 1692g overshadowing violation. Accordingly, Plaintiff's § 1692g claim is dismissed.

**B.    Section 1692e**

Section 1692e of the FDCPA contains sixteen subsections that "provide a nonexhaustive list of practices that fall within the statute's ban," *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993), including § 1692e(5), which prohibits "'[t]he threat to take any action that cannot legally be taken or that is not intended to be taken,'" *id.* (alteration in original) (emphasis omitted) (quoting 15 U.S.C. § 1692e(5)), and § 1692e(10), "a catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer,'" *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (alteration in original) (quoting 15 U.S.C. § 1692e(10)).[2] "A validation notice is deceptive, and thus violates section 1692e(10), 'when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"  *Beauchamp v. Fin.*

_____

[2] Plaintiff's Complaint contains no reference to § 1692e(5), but I address his argument under that provision in the interests of efficiency and because it is essentially subsumed by the § 1692e(10) claim.

*Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 (S.D.N.Y. Mar. 14, 2011)

(quoting *Russell*, 74 F.3d at 35).  As with § 1692g, alleged violations of § 1692e(5) and (10) are

evaluated under the least sophisticated consumer standard.  *See id.*  Indeed, "[t]he standard for

determining a violation of § 1692e(10) is essentially the same as that for § 1692g."  *Foti*, 424 F.

Supp. 2d at 666-67 (collecting cases); *see Barrientos v. Law Offices of Mark L. Nichter*, 76 F.

Supp. 2d 510, 513 (S.D.N.Y. 1999) ("Even if a defendant provides the requisite validation notice

under 1692g, it may still be liable under § 1692g and § 1692e(10) if it sends a . . .

communication within the validation period that 'overshadows or contradicts' such notice . . . .").

Plaintiff contends that the collection letter violates § 1692e(5) and (10) because it "is a

direct threat of negative credit reporting against Plaintiff's account if he does not immediately

satisfy his 'credit obligations'" and "threatens negative credit reporting even after a debt

validation request has been made, which is an action Defendants would not be legally allowed to

take."  (P's Opp. at 13, 15-16.)  But the collection letter contains no such threat, either explicitly

or implicitly.  Contrary to Plaintiff's assertion that the least sophisticated consumer could

reasonably interpret the letter to mean that Defendants "*will* negatively credit report the account

if it is not paid in full, despite any debt validation request that would otherwise currently be

pending," (P's Opp. at 17-18 (emphasis added)), the statement merely notes that a negative credit

bureau report *may* be submitted if Plaintiff fails to fulfill the terms of his credit obligations, and it

contains no language suggesting that this may happen immediately or in derogation of Plaintiff's

rights, *see Cruz v. MRC Receivables Corp.*, 563 F. Supp. 2d 1092, 1101 (N.D. Cal. 2008)

("Nowhere in any of the letters Defendants sent to [Plaintiff] did they say that they *would* submit

a negative credit report.  The notice only states that 'a negative credit report reflecting on your

credit record *may* be submitted.'  [Plaintiff] cannot base her claim for violation of the FDCPA on

a statement Defendants did not make, as that would require a plainly unreasonable interpretation of the letters in question.") (emphasis in original).  In fact, the notice was explicit that Plaintiff's rights would be respected.

Plaintiff characterizes the absence of any deadline in the collection letter as an "open-ended threat," suggesting that "negative credit reporting could happen within the 30-day validation window regardless of whether a validation request had been made, and it even could be made thereafter when such a request had still been pending."  (P's Opp. at 17.)  Plaintiff goes on to argue that Defendants "had no ability to credit report if a validation request had been put in by Plaintiff and it was still pending" and that "without explaining this distinction, the letter plainly leaves this open as a possibility."  (*Id.* at 18.)  But the lack of a deadline and absence of any suggestion that negative credit reporting would occur anytime soon weighs against a finding that the statement is false or deceptive, because it is undisputed that LVNV, the current creditor, is fully entitled to enforce its rights regarding the debt – including submitting a negative credit bureau report if Plaintiff failed to satisfy his credit obligations.  *See Ward*, 2019 WL 3628795, at *3 (statement that defendant "reports to TransUnion and Equifax and your account may be reported if it is not paid" did not give rise to a § 1692e claim because "a debt collector can inform a consumer that it may report an unpaid account" and "it is a widely known fact that failure to pay debts that are owed might adversely affect one's credit rating and ability") (internal quotation marks omitted); *Spira v. I.C. Sys., Inc.*, No. 05-CV-4367, 2006 WL 2862493, at *6 (E.D.N.Y. Oct. 5, 2006) (mere threat to send negative information to credit reporting agencies does not violate § 1692e(5), as long as communication does not imply consumer has less than thirty days to dispute the debt, because collection attempts may continue during the thirty-day

window unless consumer raises a dispute).[3]  Plaintiff's supposition that negative credit reporting would occur within the thirty-day validation window regardless of whether a validation request had been made or was pending fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Hanford*, 2018 WL 2129612, at *4 (rejecting the argument that a debt collector must explain that it "would cease its collection efforts upon receiving a validation request" because although "[i]t is true that, when a consumer disputes a debt in writing, a collector must put the brakes on collection efforts until it sends the consumer a proper response," the FDCPA "does not require collectors to tell consumers this information").  Indeed, it would have been misleading for Defendants to have suggested that there could be no collection activity during the thirty-day window in which Plaintiff could decide whether to dispute the debt.

To support his argument that a threat of credit reporting can violate § 1692e even if no deadline is imposed, Plaintiff relies on a misreading of *Tsenes v. Trans-Continental Credit & Collection Corp.*, 892 F. Supp. 461 (E.D.N.Y. 1995).  In *Tsenes*, a plaintiff was able to state a § 1692e claim based on language in a collection letter that read, "to withhold further action, return this statement with payment in full."  892 F. Supp. at 465 (internal quotation marks omitted).  Plaintiff asserts that in *Tsenes*, "[n]o deadline was imposed, and yet the court found that the least sophisticated consumer could reasonably interpret this statement as a threat of legal action."  (P's Opp. at 16.)  But this relies on cherry-picked language from *Tsenes* and omits a distinguishing fact:  the collection letter in *Tsenes* requested payment within five days.  *See* 892

---

[3] In their reply memorandum, Defendants argue that "LVNV inserted the notice of the potential for negative credit reporting in order to comply with the F[air] C[redit] R[eporting] A[ct]" and that "LVNV's compliance with the FCRA should not create liability under the FDCPA."  (Doc. 18 at 9.)  I decline to consider this argument because it was raised for the first time in reply.  *See Cotona v. Fed. Bureau of Prisons*, No. 13-CV-609, 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013) ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered.").

F. Supp. at 465 ("Although this language imposes no deadline, *another portion of the notice requested payment with five days*.") (emphasis added).  By contrast, the collection letter sent to Plaintiff contains no request for payment within the thirty-day validation window.  As the letter simply informs Plaintiff that Defendants may report an unpaid account, Plaintiff has failed to plausibly allege a § 1692e violation.  *See Ward*, 2019 WL 3628795, at *3; *see also Wright*, 2020 WL 4428477, at *6 (plaintiff did not plausibly allege § 1692e violation because the court could not discern how the following language in a collection letter was false, deceptive, or misleading: "Please be advised that our client is a credit reporting client.  Your credit report may have a negative impact if we do not hear from you.") (internal quotation marks omitted).

Accordingly, Plaintiff's § 1692e claim is dismissed.

###    C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).  "Leave to amend, though liberally granted, may properly be denied" for "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Amendment is futile when the problem with a plaintiff's causes of action is substantive and better pleading will not cure it."  *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (internal quotation marks and alterations omitted).

Plaintiff has not requested leave to amend or suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.  Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]."

15

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend *sua sponte*.  *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (district court did not abuse its discretion by not granting leave to amend where there were "no possible set of facts relating to [a debt collection] letter that [plaintiff] could plead that would state a claim").

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's §§ 1692g and 1692e claims are dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 15), and close the case.

**SO ORDERED.**

Dated: October 26, 2020
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.